**FIFTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and REESE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 21, 2017**

# In the Court of Appeals of Georgia

A16A1619. SULLIVAN v. BUNNELL et al.

DILLARD, Presiding Judge.

Becky Sullivan appeals from the trial court's grant of Karen Bunnell's motion to dismiss an action to hold her in contempt of a divorce decree. Becky filed this action against Bunnell individually and in her capacity as agent for her father, Timothy Sullivan, after first filing the identical suit solely against Timothy. Specifically, Becky contends that the trial court erred in determining that (1) it lacked personal jurisdiction over Bunnell in both her individual capacity and her capacity as an agent, and (2) it lacked subject-matter jurisdiction to consider Bunnell in contempt or compel her compliance with the divorce decree that was entered into between

Becky and Timothy.[1] For the foregoing reasons, we reverse the trial court's grant of Bunnell's motion to dismiss.

The record reflects that after 23 years of marriage, Becky and Timothy Sullivan divorced in 2012. In the midst of the divorce, Timothy moved to California, where his daughter, Karen Bunnell, resided. Thereafter, Timothy hired counsel in Georgia to represent him in ongoing settlement negotiations, and Bunnell assisted him with e-mail and telephone conversations to his counsel. The divorce was made final in May 2012, with Becky and Timothy entering into various (and related) settlement agreements. It is undisputed that one such agreement provided that Timothy would send his Teacher's Retirement System of Georgia (TRS) payments to Becky.

In June 2012, Timothy executed a power of attorney, which appointed Bunnell to act as his agent. At some point after executing the power of attorney, Timothy was put under care and supervision for dementia, and he was deemed unable to make

---

[1] Becky also enumerates as error the trial court's failure to join Bunnell as a necessary party to the action, but she notes that the court did not address the merits of that argument "because it dismissed for lack of jurisdiction instead." We do not consider this enumeration of error because "[i]ssues which have not been ruled on by the trial court may not be raised on appeal." *Ga. Dept. of Nat. Res. v. Coweta Cnty.*, 261 Ga. 484, 485 (405 SE2d 470) (1991); *accord Velkey v. Grimes*, 214 Ga. 420, 420 (105 SE2d 224) (1958); *Shennett v. Piggly Wiggly So., Inc.*, 197 Ga. App. 502, 504 (5) (399 SE2d 476) (1990).

sound financial and medical decisions on his own. Then, in July 2015, in a letter from counsel by and through Bunnell acting on behalf of her father as power of attorney, Becky was informed that Timothy could no longer send his TRS payments because he was incapacitated by Alzheimer's Disease, the payments were necessary to maintain his placement in an assisted-living facility, and the failure to send the payments was not a willful violation of the parties' divorce decree. Becky responded with a letter demanding compliance with the terms of the parties' divorce agreement.

Thereafter, Becky filed a motion for attachment of contempt against Timothy on August 27, 2015, for his failure to send the TRS payments. Then, in October 2015, she amended the motion to add Bunnell both individually and in her capacity as a fiduciary for Timothy, and Bunnell was personally served by substitute service in both capacities. Bunnell, who is a resident of California, filed a limited answer by special appearance and a motion to dismiss for lack of personal and subject-matter jurisdiction.

Following a hearing on the motion to dismiss, at which Bunnell's attorney made a special appearance on her behalf, the trial court granted the motion to dismiss

after finding that it lacked both personal and subject-matter jurisdiction over Bunnell. This appeal follows.[2]

1. Becky first argues that the trial court erred in finding that it lacked personal jurisdiction over Bunnell both in her individual capacity and in her capacity as power of attorney on her father's behalf. We agree.

A defendant who files a motion to dismiss for lack of personal jurisdiction has the burden of proving same.[3] In considering whether this burden was met by Bunnell, we first turn to Georgia's Long Arm Statute, which allows the courts of this state to exercise personal jurisdiction over a nonresident defendant "if in person or through an agent, he or she . . . [t]ransacts any business with this [S]tate."[4] In interpreting this

[2] Becky originally filed her appeal as an application for interlocutory review before the Supreme Court of Georgia, which then transferred the case to this Court. We granted the application because the trial court's grant of Bunnell's motion to dismiss was subject to direct appeal. *See* OCGA § 9-11-54 (b). We further note that the action for contempt against Timothy remains pending below, and although he was included in the style of the case on appeal, Timothy is not a party to this appeal because it does not concern the action against him personally.

[3] *Am. College Conn., Inc. v. Berkowitz*, 332 Ga. App. 867, 868 (775 SE2d 226) (2015); *see also Easterling v. Easterling*, 231 Ga. 90, 90 (1) (200 SE2d 267) (1973) ("In a plea to the jurisdiction[,] the burden is upon the defendant to establish the averments of his plea.").

[4] OCGA § 9-10-91 (1).

statute, the Supreme Court of Georgia has explained that it "grants Georgia courts the unlimited authority to exercise personal jurisdiction over any nonresident who transacts any business in this State . . . to the maximum extent permitted by procedural due process."[5] Indeed, in so holding, our Supreme Court overruled prior cases that failed to "accord the appropriate breadth to the construction of the 'transacting any business' language" of the Long Arm Statute.[6]

The Supreme Court of Georgia has also explained that nothing in the Long Arm Statute "requires the physical presence of the nonresident in Georgia or minimizes the import of a nonresident's intangible contacts with the State."[7] To the contrary, Georgia permits the assertion of long-arm jurisdiction over nonresident defendants based on "business conducted through postal, telephonic, and Internet

---

[5] *Innovative Clinical & Consulting Servs. v. First Nat'l Bank of Ames*, 279 Ga. 672, 675 (620 SE2d 352) (2005) (punctuation omitted); *accord Weathers v. Dieniahmar Music, LLC*, 337 Ga. App. 816, 819 (788 SE2d 852) (2016); *Berkowitz*, 332 Ga. App. at 869-70.

[6] *Innovative Clinical & Consulting Servs.*, 279 Ga. at 676; *accord Weathers*, 337 Ga. App. at 819; *Berkowitz*, 332 Ga. App. at 870.

[7] *Innovative Clinical & Consulting Servs.*, 279 Ga. at 675; *accord Amerireach.com, LLC v. Walker*, 290 Ga. 261, 270 (2) (719 SE2d 489) (2011); *Weathers*, 337 Ga. App. at 820; *Berkowitz*, 332 Ga. App. at 871.

contacts."[8] As a result, when determining the limits of procedural due process, we apply the following three-part test:

> Jurisdiction exists on the basis of transacting business in this State if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this State, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this State does not offend traditional notions of fairness and substantial justice.[9]

The first two prongs are analyzed to determine whether "a defendant has established the minimum contacts with the forum state necessary for the exercise of jurisdiction."[10] If such minimum contacts exist, we then analyze the third prong to consider whether "the exercise of jurisdiction is 'reasonable'—that is, to ensure that

---

[8] *Berkowitz*, 332 Ga. App. at 871 (emphasis and punctuation omitted); *accord ATCO Sign & Lighting Co., LLC v. Stamm Mfg., Inc.*, 298 Ga. App. 528, 534 (1) (680 SE2d 571) (2009); *see also Home Depot Supply, Inc. v. Hunter Management LLC*, 289 Ga. App. 286, 289 (656 SE2d 898) (2008) (holding that "even when a nonresident has no physical presence in Georgia, intangible contacts, such as telephone communications, can be sufficient to establish 'minimum contacts' which meet the constitutional standard for the exercise of personal jurisdiction").

[9] *Berkowitz*, 332 Ga. App. at 870 (punctuation omitted); *accord Walker*, 290 Ga. at 269 (2); *Aero Toy Store v. Grieves*, 279 Ga. App. 515, 517-18 (1) (631 SE2d 734) (2006).

[10] *Berkowitz*, 332 Ga. App. at 870 (punctuation omitted); *accord Weathers*, 337 at 820 (1); *ATCO Sign & Lighting*, 298 Ga. App. at 534 (1).

6

it does not result solely from 'random,' 'fortuitous' or 'attenuated' contacts."[11] To be sure, the application of the minimum-contacts rule will "vary with the quality and nature of the defendant's activity."[12] Nevertheless, it is essential in each case that there be "some act by which the defendant purposefully avails [herself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[13] With these guiding principles in mind, we turn now to Becky's contentions that the trial court erred in determining that it lacked personal jurisdiction over Bunnell in either her individual or fiduciary capacity.

In her motion to dismiss, Bunnell argued that there were "no factual allegations of . . . business or sufficient contacts with Georgia so as to warrant jurisdiction" over her in either capacity. Suffice it to say, Becky disagreed with this assertion, alleging that, during the pendency of the divorce proceedings, Bunnell (1) "was intimately

---

[11] *Berkowitz*, 332 Ga. App. at 870 (punctuation omitted); *accord Weathers*, 337 at 820 (1); *ATCO Sign & Lighting*, 298 Ga. App. at 534 (1).

[12] *Berkowitz*, 332 Ga. App. at 870 (punctuation omitted); *accord Catholic Stewardship Consultants, Inc. v. Ruotolo Associates, Inc.*, 270 Ga. App. 751, 757 (1) (608 SE2d 1) (2004); *Stuart v. Peykan, Inc.*, 261 Ga. App. 46, 49 (1) (581 SE2d 609) (2003).

[13] *Berkowitz*, 332 Ga. App. at 870 (punctuation omitted); *accord Ruotolo Associates, Inc.*, 270 Ga. App. at 757 (1); *Stuart*, 261 Ga. App. at 49 (1).

aware of the details and contents of the settlement documents"; (2) "hired Georgia counsel and actively engaged in renegotiating the settlement terms prior to the entry of the [f]inal [d]ecree"; and (3) had several exchanges with Georgia counsel, subsequent to the entry of the final divorce decree, about Becky's claims of Timothy's non-compliance.

We decline Becky's invitation to subject Bunnell to the personal jurisdiction of this state based on *Timothy's* contempt of the divorce decree. Whatever involvement Bunnell may have had in the divorce proceedings between Becky and Timothy, it strains credulity to suggest that this somehow subjects her to personal jurisdiction as a result of *Timothy's* contempt of the divorce decree. Indeed, the alleged violation of the divorce decree forms the foundation for the cause of action, not the negotiations that resulted in the final decree.[14]

[14] *See Berkowitz*, 332 Ga. App. at 870 (noting that jurisdiction exists on the basis of transacting business in Georgia if, *inter alia*, the cause of action arises from or is connected with such act or transaction); *Aero Toy Store*, 279 Ga. App. at 517-18 (1) (same); *cf. Noorani v. Sugarloaf Mills Ltd. Partnership of Ga.*, 308 Ga. App. 800, 804 (a), 804 (2) (b) (708 SE2d 685) (2011) (holding that personal jurisdiction over appellant was proper when he personally guaranteed rent payments that were subject of dispute, and "the direct connection between the loan, guaranty, [appellant's] activities [in Georgia] and [the plaintiff's] claim under the guaranty [was] so obvious as to require no elaboration"); *Ga. R.R. Bank & Trust Co. v. Barton*, 169 Ga. App. 821, 823 (315 SE2d 17) (1984) ("The direct connection between the execution of the notes and appellant's suit for collection is so obvious as to require no elaboration.").

That said, Becky's motion for contempt also alleges that Bunnell, acting as Timothy's agent, "hired Georgia counsel to draft and send correspondence . . . indicating that due to changes in his health and residence, he would no longer be sending any TRS payments to [Becky] effective August, 2015." And in her response to Bunnell's motion to dismiss, Becky further alleges that Bunnell has, for some time, been involved in communications with her regarding Timothy's noncompliance with the TRS-terms of the divorce decree and acted to reduce the TRS payments by modifying deductions. Then, in July 2015, Bunnell notified Becky that the TRS payments would cease altogether.

These post-divorce allegations sufficiently allege that Bunnell has done some act or consummated some transaction in this state, although she did so on behalf of her father as power of attorney. But, at least as to individuals who act as agents or fiduciaries on behalf of a corporation, our Supreme Court has concluded that "[t]he status of . . . individual defendants as employees or officers does not somehow insulate them from jurisdiction."[15] Indeed, the status of an agent does not "necessarily mean that the individual defendants did not purposefully avail themselves of the privilege of conducting activities in Georgia such that the minimum contacts

---

[15] *Amerireach.com, LLC*, 290 Ga. at 267 (2) (punctuation omitted).

mandated by constitutional due process were not present."[16] For example, employees of a corporation that is subject to the personal jurisdiction of the courts of the forum state "may themselves be subject to jurisdiction if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation."[17]

Here, Bunnell is alleged to have been a primary participant in the activities at issue—*i.e.*, the nonpayment of TRS payments in violation of Becky and Timothy's divorce decree.[18] And Becky's cause of action for contempt unquestionably arises from those activities.[19] Furthermore, at least two other states have determined that their courts could properly assert personal jurisdiction over a non-resident individual

---

[16] *Id.*

[17] *Id.* at 267-68 (2) (punctuation omitted).

[18] *Id.* at 269-70 (2) (holding that allegations supported finding that individual defendants were primary participants in defendant corporation's transaction of business in Georgia when it was alleged that the individual defendants directly facilitated transaction of business that resulted in unlawful conduct set forth in complaint).

[19] *See Noorani*, 308 Ga. App. at 804 (2) (a), 804 (2) (b) ("[T]he direct connection between the loan, guaranty, [appellant's] activities [in Georgia] and [the plaintiff's] claim under the guaranty [was] so obvious as to require no elaboration"); *Barton*, 169 Ga. App. at 823 ("The direct connection between the execution of the notes and appellant's suit for collection is so obvious as to require no elaboration.").

who acted as a power of attorney.[20] Indeed, one such court noted that "[a]n agency relationship does not shield an individual from jurisdictional contacts with a state, only from possible liability flowing from the activities conducted within the forum state."[21] We find this reasoning persuasive and consistent with our own jurisprudence in this area of the law. In our view, the assertion of personal jurisdiction over an individual who acted as power of attorney does not offend traditional notions of fair play and substantial justice when, as an attorney in fact, Bunnell took advantage of the laws of the State of Georgia to exercise control over her father's assets (the TRS payments) and purposefully directed her activities toward a Georgia resident (Becky).[22]

---

[20] *See Catauro v. Goldome Bank for Sav.*, 189 AD2d 747, 748 (N.Y. App. Div. 1993); *Smith v. Lanier*, 998 SW2d 324, 334 (Tex. App. 1999). *But see Cohn v. Woolin*, 971 So2d 868, 871-72 (Fla. Dist. Ct. App. 2007) (remanding to trial court for additional findings as to personal jurisdiction after reversing determination that court had personal jurisdiction based upon allegation that son brought a lawsuit in his mother's name via power of attorney).

[21] *Smith*, 998 SW2d at 334-35.

[22] *See id.* (holding that assertion of personal jurisdiction over non-resident individual who acted as power of attorney did not offend traditional notions of fair play and substantial justice when, as attorney in fact, she took advantage of the laws of the state to exercise control over her father's assets, purposefully directed her activities toward state residents and institutions, and was on notice that her father's property might be subject to the jurisdiction of the state's probate courts); *see also*

Accordingly, for all of the foregoing reasons, the trial court erred in determining that it could not exercise personal jurisdiction over Bunnell.

2. Sullivan further argues that the trial court erred in holding that it lacked subject-matter jurisdiction to hold Bunnell in contempt. Once again, we agree.

Although the parties and trial court framed this issue in the context of lacking subject-matter jurisdiction, this was more properly an argument that Becky's attempt to hold Bunnell in contempt failed to state a claim upon which relief could be granted.[23] Indeed, a superior court has the authority to "entertain an action for contempt of a Georgia divorce decree,"[24] and subject-matter jurisdiction is "the power to deal with the general abstract question, to hear the particular facts in any case

---

*Catauro*, 189 AD2d at 748 (holding that assertion of personal jurisdiction over non-resident individual who acted as power of attorney was appropriate when he transacted business to withdraw funds from joint bank account).

[23] *Cf. Pinnacle Benning LLC v. Clark Realty Capital, LLC*, 314 Ga. App. 609, 612 (724 SE2d 894) (2012) ("[W]e recognize that in the case sub judice, [appellee's] motion to dismiss, the trial court's order granting same, and the parties' arguments on appeal all frame the issues in the context of a failure to state a claim upon which relief can be granted[,] [b]ut . . . [appellant's] claims were in actuality properly dismissed for a lack of subject-matter jurisdiction[.]").

[24] *Crutchfield v. Lawson*, 294 Ga. 407, 409 (754 SE2d 50) (2014).

relating to this question."[25] Of course, jurisdiction of the subject matter "does not mean simply jurisdiction of the particular case then occupying the attention of the court, but jurisdiction of the class of cases to which that particular case belongs."[26] Therefore, the question before the trial court—a superior court with jurisdiction to entertain actions for contempt of Georgia divorce decrees[27]—was whether Becky

---

[25] *Id.* (punctuation omitted); *accord Melton v. Jenkins*, 50 Ga. App. 615, 615 (1) (178 SE 754) (1935).

[26] *Crutchfield*, 294 Ga. at 409 (punctuation omitted); *accord Zeagler v. Zeagler*, 192 Ga. 453, 456 (15 SE2d 478) (1941).

[27] *See supra* footnote 24 and accompanying text.

failed to state a claim against Bunnell upon which relief could be granted,[28] not whether the court lacked subject-matter jurisdiction.[29]

A motion to dismiss for failure to state a claim upon which relief can be granted will only be granted when it is shown with certainty that "the plaintiff would not be entitled to relief under any state of facts that could be proven in support of his

---

[28] *See Crowley v. Tedesco*, 687 A2d 194 (Table) (4) (Del. 1996) (noting petition that alleged "[party] had violated a court order" was dismissed for failure to state a claim upon which relief can be granted when court found that no such order had been entered, meaning that "there was no basis to hold [party] in contempt"); *Joseph v. Bureau of Corrections*, Civ. No. 2009–0055, 2011 WL 1304605, at \*5 (V.I. March 7, 2011) ("[T]he [appellee] could not be bound by the order placing terms and conditions on the [appellant]. If the [appellee] cannot be bound by the order, then the order is not valid as it applies to the [appellee]—even if the order is valid with respect to [the appellant]—and [appellee] cannot be in contempt of that order. Therefore, we cannot draw a reasonable inference that [appellant] has a plausible claim for relief and, thus, we affirm the trial court's dismissal of the contempt count for failure to state a claim." (citation omitted)).

[29] *Cf. Crutchfield*, 294 Ga. at 409 ("[T]he question before us does not concern what type of court in which the entire class of contempt cases must be brought; instead, it deals with the question of which superior court may properly consider this particular case. This latter consideration is one of venue, not subject matter jurisdiction.").

or her claim."[30] And we review a trial court's ruling on a motion to dismiss *de novo*.[31] Moreover, in deciding a motion to dismiss, "all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor."[32]

In the case *sub judice*, Becky asserted that the trial court could hold Bunnell in contempt of the divorce decree under OCGA § 15-1-4 (a) (3), which provides that the power of a court to punish for contempt of court extends to, *inter alia*, "[d]isobedience or resistance by any officer of the courts, party, juror, witness, or other person or persons to any lawful writ, process, order, rule, decree, or command of the courts[.]" Although Bunnell argued that she could not be held in contempt of a divorce decree to which she was not a party, in Georgia, the violation of a court's order by one who was not a party to the proceedings can be punished as contempt if "it is alleged and proved that the contemnor had *actual* notice of the order for

---

[30] *Tate v. Kia Autosport of Stone Mtn., Inc.*, 273 Ga. App. 627, 627-28 (616 SE2d 112) (2005) (punctuation omitted); *accord Common Cause/Ga. v. Campbell*, 268 Ga. App. 599, 601 (2) (602 SE2d 333) (2004).

[31] *Tate*, 273 at 628; *Campbell*, 268 Ga. App. at 601 (2).

[32] *Jordan v. City of Atlanta*, 283 Ga. App. 285, 285 (641 SE2d 275) (2007) (punctuation omitted); *accord Anderson v. Flake*, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997).

disobedience of which he is sought to be punished."[33] And, as recognized by our

Supreme Court, "[m]ost jurisdictions also require that the nonparty be in privity with,

aid or abet, or act in concert with the named party in acts constituting a violation of

the order."[34] Thus, one who acts as the representative of another with actual notice of

the order that has allegedly been violated may be held in contempt.[35]

---

[33] *Bootery, Inc. v. Cumberland Creek Props., Inc.*, 271 Ga. 271, 272 (2) (517 SE2d 68) (1999) (punctuation omitted).

[34] *Id.*; *see Murphy v. Murphy*, 330 Ga. App. 169, 176 (6) (a) (ii) (767 SE2d 789) (2014) ("The violation of a court's order by one who was not a party to the proceedings can be punished as a contempt if the contemnor had actual notice of the order and is in privity with, aided and abetted, or acted in concert with the named party in acts constituting a violation of the order."); *see also United States v. Kirschenbaum*, 156 F3d 784, 794 (III) (D) (7th Cir. 1998) (Manion, J.) ("A district court may not enjoin non-parties who are neither acting in concert with the enjoined party nor are in the capacity of agents, employees, officers, etc. of the enjoined party."); *Blockowicz v. Williams*, 675 FSupp2d 912, 914 (N.D. Ill. 2009) ("[A] court may find a nonparty in contempt if that person has actual knowledge of the court order and either abets the party named in the order or is legally identified with him." (punctuation omitted)).

[35] *See Murphy*, 330 Ga. App. at 176 (6) (a) (ii) (holding that evidence was sufficient to hold mother's attorney in contempt when attorney had actual notice of order and "acted as [mother's] representative" when he engaged in an action that violated order); *cf. Segal v. Dorber*, 250 Ga. App. 688, 689 (1) (552 SE2d 873) (2001) (holding that attorney could not be held in contempt for client's failure to pay fee as ordered by court because trial court lacked authority to hold attorney in contempt "for violating an order which was not directed at him, at least in the absence of evidence he caused or contributed to [the client's] failure").

16

Here, it is alleged that Bunnell, acting as Timothy's power of attorney with knowledge of the relevant order, aided in implementing the non-payment of TRS funds to Becky in violation of the former couple's divorce decree and settlement agreement.[36] Thus, Becky asserted sufficient facts to withstand a motion to dismiss for failure to state a claim upon which relief could be granted, and the trial court erred in granting the motion to dismiss under this argument.

Accordingly, for all of the foregoing reasons, we reverse.

*Judgment reversed. Rickman and Reese, JJ., concur.*

---

[36] *See supra* footnote 35.

17